Ronald H. WHELAN et al.,
Plaintiffs-Appellants,

v.

Charles S. BRINEGAR, Secretary of the Department of Transportation, et al.,
Defendants-Appellees.

No. 954, Docket 75–6129.

United States Court of Appeals,
Second Circuit.

Argued May 12, 1976.

Decided June 17, 1976.

---

Joel C. Glanstein, New York City (Markowitz & Glanstein, Eleanor Glanstein, New York City, of counsel), for plaintiffs-appellants.

Richard J. McCarthy, New York City (Robert B. Fiske, Jr., U.S. Atty. for the Southern District of New York, Patrick H. Barth, Asst. U.S. Atty., New York City, of counsel), for defendants-appellees.

Before SMITH, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

PER CURIAM:

Appellants, officers and crew of the Governor's Island Ferry, claim that the Government has missed the boat in not granting them proper pay raises since June 1966. Judge Metzner, of the Southern District of New York, whose decision we will not disturb, disagrees.

On June 1, 1966, responsibility for the operation of the Ferry was transferred from the Army to the Coast Guard, at that time a branch of the Department of the Treasury. Acting pursuant to 5 U.S.C. § 5348(a), which requires the payment of federal maritime salaries "in accordance with prevailing rates and practices in the

maritime industry," the Wage Board of the Treasury Department entered an order adopting the Army's basic wage rates for appellants, adding thereto a pay increase identical with one granted shortly before to comparable New York City Staten Island Ferry employees. The Board also decided that this parity of increase, on a "cents per hour" basis, would be maintained in the future.

On October 15, 1966, jurisdiction over the Coast Guard was transferred to the newly created Department of Transportation (DOT). Thereafter, appellants received no salary increases until 1969, although Staten Island Ferry employees had received an increase on July 1, 1967. In December 1969, appellants received a 25% increase retroactive to August 28, 1968, which placed them on a parity with Staten Island Ferry employees as of that date. Appellants contend, however, that the increase should have been made retroactive to July 1, 1967, and they seek an award for the additional monies they would have earned from that date to August 28, 1968 had the wage increase been in effect.

On August 15, 1971, an Executive Order was issued pursuant to the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 (Supp. 1976), establishing a wage and price freeze. Subsequent Executive Orders established a wage increase ceiling and empowered the United States Civil Service Commission to establish rates for federal employees. The Commission established a 5.5% maximum limit on annual wage increases, but exemptions from this ceiling were permitted where (a) there was a tandem relationship between a pay schedule for a specialized federal employee unit and a similar private employee unit, (b) a pay increase in excess of the guidelines had been permitted in the private employee unit, and (c) a comparable increase in the federal employee unit was essential to its continued operation. Exec. Order No. 11,639, 37 Fed.Reg. 521 (Jan. 11, 1972).

A 40% wage increase for Staten Island Ferry employees in 1970 prompted appellants to seek similar benefits. In March 1972, DOT granted appellants a 5.5% increase and sought an exemption from the Civil Service Commission for an additional 8.5%. This request was denied on the ground that none of the required conditions for an exemption had been met.[1] An additional 5.5% increase was granted in May 1973, but, again, the exemption was denied, this time because conditions (a) and (c) had not been met. Appellants contend that both of these decisions were arbitrary and capricious and request a retroactive adjustment of their pay levels.

In considering the propriety of wage increases since 1969, DOT has used as a guideline the prevailing industry rates of the entire New York harbor. Because these rates have been lower than those of Staten Island Ferry employees considered alone, appellants assert that DOT should have followed the Treasury Board's "Staten Island parity" rule. They contend that this rule has never been properly repealed or modified and that no valid reason for a change in the method of determining wage parity has been established. This, they say, requires a retroactive adjustment in pay rates with a concomitant monetary award.

■ Appellants' appeal from that portion of the judgment dismissing the complaint as against the Civil Service Commission can be quickly disposed of. Section 211(b)(2) of the Economic Stabilization Act, 12 U.S.C. § 1904 (Supp. 1976), confers exclusive jurisdiction for appeals arising under the Act in the Temporary Emergency Court of Appeals. This portion of the appeal is therefore severed and dismissed. *See M. Spiegel & Sons Oil Corp. v. B. P. Oil Corp.*, 531 F.2d 669, 670 (2d Cir. 1976).

■ Appellees, relying on the recent decision of the Supreme Court in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114, 44 U.S.L.W. 4245

---

1. The 1970 pay increase to employees in the private sector was granted before the imposition of wage controls.

(1976), contend that the District Court was barred by the doctrine of sovereign immunity from making any award for back pay. We need not reach this contention, however, because we find no error in the District Court's holding that appellants were being paid "in accordance with prevailing rates and practices in the maritime industry" as required by 5 U.S.C. § 5348(a). Judicial review of the decisions of an agency such as DOT is limited to determining whether they were so arbitrary as to be clearly wrong, *United States v. Shimer*, 367 U.S. 374, 381–82, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961); *Daniels v. United States*, 407 F.2d 1345, 1347, 187 Ct.Cl. 38 (1969), and appellants have not met the heavy burden thus imposed upon them in this case.

■ DOT was not required to comply with the publication requirements of the Administrative Procedure Act, *see* 5 U.S.C. §§ 552, 553, before abrogating the "Staten Island parity" rule of the Treasury Department and applying a harbor-wide, wage survey standard. Publication is required as to "substantive rules of general applicability", 5 U.S.C. § 552(a)(1)(D), but not as to matters that are "related solely to the internal personnel rules and practices of an agency". 5 U.S.C. § 552(b)(2). In any event, Judge Metzner's finding that, as early as 1968, appellants had actual knowledge of DOT's switch to a wage survey system precludes their reliance on any failure to publish. 5 U.S.C. §§ 552(a)(1), 553(b).

We sever and dismiss that portion of the appeal which seeks review of the District Court's judgment dismissing the complaint against the Civil Service Commission and affirm the remainder of the judgment.