MOBIL OIL CORP., Atlantic Richfield Co., United Refining Co., Inc., and Gulf Oil Co., Chevron U.S.A. Inc., Amoco Oil Co., Texaco Inc. and Exxon Corp., Plaintiffs-Appellees,

v.

James H. TULLY, Jr., Thomas H. Lynch, and Francis Koenig, Constituting the New York State Tax Commission; Robert Abrams, Attorney General of the State of New York; and James L. La-Rocca, Commissioner of the New York State Energy Office, Defendants-Appellants.

NEW ENGLAND PETROLEUM CORP., Plaintiff-Appellee,

v.

James H. TULLY, Jr., Commissioner of Taxation and Finance of the State of New York, and Robert Abrams, Attorney General, State of New York, Defendants-Appellants.

AMERADA HESS CORP., Plaintiff-Appellee,

v.

James H. TULLY, Jr., Thomas H. Lynch and Francis Koenig, Constituting the New York State Tax Commission; Robert Abrams, Attorney General of the State of New York, and James L. La-Rocca, Commissioner of the New York State Energy Office, Defendants-Appellants.

No. 482, Docket 80-7785.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1980.

Decided Jan. 28, 1981.

Thomas R. Trowbridge, III, New York City (Donovan, Leisure, Newton & Irvine, New York City, John M. Freyer, Bond, Schoeneck & King, Syracuse, N. Y., of counsel), for plaintiffs-appellees Mobil Oil Corp., Atlantic Richfield and United Refining Co.

Edward F. Gerber, Syracuse, N. Y. and Arthur C. Vangeli and Sydney M. Avent, Philadelphia, Pa., of counsel, for Gulf Oil Corp.

George Weisz, New York City (Cleary, Gottlieb, Steen & Hamilton, New York City, James C. Blair, New York City, Warner Bouck, Bouck, Holloway & Kiernan, Albany, N. Y., of counsel), for plaintiff-appellee New England Petroleum.

Stanley D. Robinson, New York City (Kaye, Scholer, Fierman, Hays & Handler, New York City, William L. Allen, Jr., Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N. Y., of counsel), for plaintiff-appellee Amerada Hess Corp.

Edward Costikyan, and Simon H. Rifkind, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for defendants-appellants Tully, Lynch and Koenig.

Shirley Adelson Siegel, Sol. Gen., State of New York, Albany, N. Y., of counsel, for Robert Abrams and defendant-appellant LaRocca.

Before MULLIGAN and VAN GRAAFEILAND, Circuit Judges, and WERKER, District Judge.[*]

MULLIGAN, Circuit Judge:

On June 18, 1980, New York Governor Hugh Carey signed into law two bills, Senate Bills 10188 and 10261, which created a new Section 182 of the New York Tax Law and established a 2% tax on the "gross receipts" of oil companies doing business in New York. 1980 N.Y. Laws, ch. 271, 272 (N.Y.Act); N.Y.Tax Law § 182 (McKinney Supp.1980). The express purpose of the tax is to raise additional revenue to aid the State's ailing public transportation system. N.Y. Act, ch. 272 § 1. Indeed, it has been estimated by the New York State Division of the Budget that the new tax would raise an additional 235 million dollars annually. Oil companies were reported to have reaped unjustifiably high profits as a result of market conditions and were therefore deemed to be an appropriate source of revenue. N.Y. Act, ch. 272 § 1. In order to ensure that the oil companies, and not the consuming public, bore the burden of the tax, the legislature provided in Section 4(12)(a) of the Act (the anti-passthrough provision) that:

> [t]he tax imposed by this section and any penalty which may be assessed under this subdivision shall be a liability of the oil company, shall be paid by such company and shall not be included, directly or indirectly, in the sales price of its products sold in this state.

N.Y.Tax Law § 182(12)(a) (McKinney Supp. 1980). Companies which are found to have passed on the cost of the tax through product pricing are subject to a penalty equal to 100% of the tax liability for the year in which the violation occurs. N.Y.Tax Law § 182(12)(b)(2). In addition, the legislature hinged the viability of the tax itself upon the validity of the anti-passthrough provision. In 1980 N.Y. Laws, ch. 272, § 5 (the self-destruct provision), the legislature provided that:

> [i]f the provisions of [the anti-passthrough section] is [sic]: (i) adjudged by any court of competent jurisdiction to be invalid and after exhaustion of all further judicial review; or (ii) held in a formal opinion or ruling issued by the federal Economic Regulatory Administration or any other federal agency of com-

---

[*] United States District Judge for the Southern District of New York, sitting by designation.

petent jurisdiction to be violative of the provisions of the federal Emergency Price Allocation Act of 1973, as amended, or the federal Mandatory Petroleum Price Regulations (10 CFR 212) promulgated pursuant thereto, or any successor federal law or regulation, and thereby rendered inoperative, and after exhaustion of all appeals therefrom, then, in either of such events, all of the provisions of this act shall cease to be in force and effect [ten days thereafter].

The plaintiffs-appellees, ten oil companies concededly subject to the tax, instituted these actions in the Northern District of New York against the defendants-appellants, New York State Tax Commission, New York State Attorney General and the Commissioner of the New York State Energy Office, seeking declaratory and injunctive relief. The oil companies argued that the anti-passthrough provision was invalid (a) because it conflicted with the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 et seq. (EPAA) and the Federal Mandatory Petroleum Price Regulations, 10 C.F.R. §§ 212.1, 212.82 and 212.83, issued thereunder and was therefore preempted by the Supremacy Clause of the United States Constitution (U.S.Const. art. VI, cl. 2); and (b) because it violated the Commerce and Due Process Clauses of the United States Constitution. At no time did the plaintiffs attack the validity of the tax itself. The plaintiffs, after expedited discovery, moved for summary judgment while the defendants moved to dismiss the actions for lack of federal jurisdiction under 28 U.S.C. § 1341, the Tax Injunction Act. By order dated September 4, 1980, the District Court denied the defendants' motion to dismiss and granted summary judgment in favor of the plaintiffs.

In a memorandum and decision dated September 19, 1980, Judge Neal G. McCurn held that the anti-passthrough provision was in effect a price control and not a rule of tax incidence. *Mobil Oil Corp. v. Tully*, 499 F.Supp. 888 at 894 (N.D.N.Y.1980). The court therefore held that the Tax Injunction Act, 28 U.S.C. § 1341 was inapplicable. *Id.* In addition, because the "price

control" provision was found to be in conflict with the EPAA and the regulations issued thereunder, Judge McCurn declared that the provision was preempted by federal law with respect to exempt and non-exempt petroleum products. *Id.* at 907, 910. Judgment was entered on September 19, 1980 but on motion by the defendants-appellants, the District Court stayed enforcement until October 31, 1980. *Mobil Oil Corp. v. Tully*, 499 F.Supp. 888 (N.D.N.Y. 1980). The stay was continued by this court in a ruling from the bench at oral argument on October 30, 1980.

The defendants-appellants appeal from Judge McCurn's order denying their motion to dismiss and granting the plaintiffs-appellees' motion for summary judgment. The appellees have moved before this court to dismiss the appeal for want of appellate jurisdiction. Arguing that this case "arises under" the EPAA, the appellees' position is that exclusive jurisdiction over all issues in this case is vested in the Temporary Emergency Court of Appeals (TECA) by virtue of Section 5 of the EPAA, 15 U.S.C. § 754(a)(1), which incorporates the review provisions of Section 211(b)(2) of the Economic Stabilization Act. 12 U.S.C.A. § 1904, note (West Supp.1980). Thus, this case and its companion case also decided today, *Mobil Oil Corp. v. Dubno*, 639 F.2d 919 (2d Cir. 1981) require an analysis of the appropriate allocation of appellate jurisdiction between a court of appeals and the TECA.

## I

### *The Motion to Dismiss*

#### (a) *Preemption*

The threshold issue on this appeal is whether this court has jurisdiction to hear it. The appellee oil companies have argued that Section 211(b)(2) of the ESA, 12 U.S.C.A. § 1904, note (West Supp.1980), provides that the Temporary Emergency Court of Appeals (TECA) has "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under [ESA]." Section 5 of the

EPAA, 15 U.S.C. § 754(a)(1), incorporates by reference the jurisdictional provisions of § 211 of the ESA where there is judicial review of the regulations promulgated under Section 753(a) of the EPAA (mandatory allocation of crude oil, residual fuel oil and refined petroleum products) as well as any order or action taken by the President or his delegate under the chapter.

In *Coastal States Marketing, Inc. v. New England Petroleum Corp.*, 604 F.2d 179 (2d Cir. 1979) we held that a case or controversy arises under the ESA or EPAA where the district court has adjudicated an "ESA issue." (The court used that expression to mean issues involving the ESA and the EPAA as well as regulations promulgated under both statutes. *Id.* at 182 n.3). The Tenth Circuit has indicated that an ESA issue is one "involving the construction, applicability and effect" of the EPAA, *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1382 (10th Cir. 1978), cert. denied, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979).

The preemption issue presented here does present an EPAA question which was adjudicated in the District Court and is thus within TECA's exclusive appellate jurisdiction. A major contention of the oil companies was that Section 182(12)(a) of the New York Tax Law prohibiting the passthrough of the two percent gross receipts tax was unconstitutional as a state price control rule which conflicted with the EPAA and the provision thus void under the Supremacy Clause of the United States Constitution (U.S.Const. art. VI, cl. 2). To make the determination that the state law conflicted with the federal regulations, as Judge McCurn found, necessitates "a careful examination of the Federal EPAA and the Mandatory Price Regulations promulgated thereunder." *Mobil Oil Corp. v. Tully*, supra, at 892. The trial judge proceeded therefore to analyze in detail the federal statute and regulations to determine whether or not the state law was in conflict with the regulations as well as the congressional scheme and policy. *Id.* at 898–910. Whether that analysis was correct is not properly before this court since in making the analysis the District Court was clearly construing and interpreting the EPAA and its regulations.

The appellants argue that the preemption claims arise under the Constitution rather than the EPAA and thus do not pose an EPAA question. The argument is not persuasive. In *Swift & Co. v. Wickham*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), the Supreme Court held that the issue of preemption did not involve a substantial constitutional question so as to warrant the convening of a three judge court pursuant to 28 U.S.C. § 2282. The Court declared that the basic question involved in a preemption case "is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes." *Id.* at 120, 86 S.Ct. at 263. See also *American Federation of Labor v. Watson*, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946).

This court has made a similar analysis in *Andrews v. Maher*, 525 F.2d 113, 119 (2d Cir. 1975).

"While [the Supremacy Clause] is the reason why a state law that conflicts with a federal statute is invalid, it is the federal statute that confers whatever rights the individual is seeking to vindicate."

It is obvious that in this case the trial court was obligated to and did make an analysis and interpretation of the two statutory schemes involved here, both state and federal. Having found that an impermissible conflict existed between the anti-passthrough provision and the federal statute, regulations and congressional policy, the finding of preemption was automatic. Appellants further argue that if arguendo the District Court did have exclusive jurisdiction in all suits arising under the EPAA, then it should not have adjudicated that issue but rather it should have followed the statutory mandate of Section 211(c) and made a determination as to whether a substantial constitutional question exists and if so "certify such issue to [TECA]." While our analysis would indicate that the substantial issue was statutory and regulatory analysis and interpretation rather than con-

stitutional, the short answer to the contention is that the certification issue is a determination to be made by TECA and not this court. *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.*, 591 F.2d 711, 716 (Em.App.), cert. denied, 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979).

Appellants' further argument that an EPAA question is one limited to cases and controversies involving a regulation promulgated under Section 753(a) and not to all cases or controversies arising under the EPAA itself is at odds with our statutory interpretation in *Coastal States Marketing v. New England Petroleum Corp., supra.* Here the District Court did analyze and apply the statute, the regulations and the underlying congressional policy. The District Court further made an adjudication resting on its interpretation of that federal scheme. It therefore decided an EPAA issue sufficient to vest TECA by statutory mandate with exclusive jurisdiction of this appeal on the preemption issue.

### (b) *The Anti-Injunction Act*

■ The oil company appellees' motion to dismiss the appeals on jurisdictional grounds is also addressed to the second issue on this appeal—that 28 U.S.C. § 1341, the Tax Injunction Act, deprived the District Court of jurisdiction. The appellants argue that the determination of the District Court that 28 U.S.C. § 1341 did not deprive it of jurisdiction was erroneous. The appellees contend, however, that the issue was ancillary to the EPAA question and therefore within TECA's exclusive appellate jurisdiction. We disagree with both arguments.

Section 1341 precludes the district courts from enjoining, suspending or restraining "the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." It is apparent that the inquiry of the District Court on this issue did not require any analysis of the EPAA or its regulations. It required solely an interpretation of a state statute to determine whether or not an injunction, suspension or restraint was proscribed by the federal statute. Appellees seemingly recognize this but denominate it as an issue ancillary to the EPAA preemption question and therefore within TECA's exclusive jurisdiction.

In a comparable setting TECA has declined to take jurisdiction. In *Texaco, Inc. v. Department of Energy*, 616 F.2d 1193 (Em.App. 1979) TECA declined to accept jurisdiction to review a District Court holding that the Federal Energy Regulatory Commission had review authority under the Department of Energy Organization Act even though the DOE actions which were to be reviewed by the FERC were taken under the EPAA. The court reasoned that since the District Court's only decision was that the FERC had review authority, which was under the DOE Act and not the EPAA, it could not exercise jurisdiction since it involved the interpretation of a statute not within the review provisions of 15 U.S.C. § 754(a). The court stated, ". . . TECA has repeatedly refused to exercise jurisdiction over issues or claims not arising under the EPAA even though they may be joined in the same case with other issues or claims that do arise under the EPAA." *Id.* at 1196.

Here the federal statutory prohibition is plainly not within the EPAA and the refusal of TECA to exercise such jurisdiction is reasonably to be anticipated. Obviously, the TECA position can result in bifurcated appeals as it will in this case but that has been anticipated by this court in *Coastal States Marketing v. New England Petroleum Corp., supra*, 604 F.2d at 185. It is desirable to defer to a specialized federal appellate court, TECA, with its special expertise on EPAA issues, which in this appeal, includes the preemption question involving analysis of the congressional intent in enacting the EPAA and the interpretation of the regulations adopted pursuant thereto.

■ The oil companies rely upon several TECA holdings where TECA did take jurisdiction over ancillary non-EPAA issues so that it could "perform . . . the normal and necessary functions of any court." *Quincy Oil Inc. v. Federal Energy Administration*, 620 F.2d 890, 893 (Em.App.1980). However, TECA has exclusive jurisdiction only over EPAA issues. *Coastal States, supra*, 604 F.2d at 181. This Court as a court of appeals has concurrent jurisdiction in an appeal from a final order of a District Court over independent issues which do not present an EPAA question. *Id.* at 186. The Section 1341 question is substantial and is independently appealable to this court. The oil company's reliance on *M. Spiegel & Sons Oil Corp. v. B. P. Oil Corp.*, 531 F.2d 669 (2d Cir. 1976) is misplaced. That case did involve an appeal from an EPAA question which was within the exclusive jurisdiction of TECA as well as an ancillary issue—an appeal from an interlocutory order of the District Court refusing to transfer the action to another District Court. Our dismissal was based on the proposition that a ruling on a transfer motion is not independently appealable under 28 U.S.C. § 1292(a)(1). In this case the Section 1341 issue is independent and severable from the EPAA question and presents us with an appealable order from a final order of the District Court.

We conclude therefore that the motion to dismiss the appeal on jurisdictional grounds is granted with respect to the preemption question and denied as to the Section 1341 issue.

## II

■ Having determined that the preemption issue is within the exclusive jurisdiction of TECA and that the applicability of the Tax Injunction Act is properly before this court, we address the latter issue. Section 1341 is brief and facially clear:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The position of the State defendants is essentially that the order of the District Court has effectively restricted the "assessment, levy or collection" of a New York State Tax and is thus within the clear proscription of Section 1341. The oil companies argue that they do not at all challenge the validity of the tax but simply the anti-passthrough provisions which they denominate as an exercise not of the taxing power of the State but rather its police power. The anti-passthrough provision, they urge, is a price fixing statute and not a taxing device. While the statutory linkage between the validity of this provision and the continued existence of the tax does result in the frustration of the State's power to collect the tax, this was the calculated decision of the legislature and not the result of the court's determination. While the briefing and argument on this issue has been intensive, there is no authority precisely in point.

The State appellants argue that Section 182(12)(a) is a state tax law and that the State has the authority to select the target of the tax. They rely upon language in *First Agricultural National Bank v. Tax Commission*, 392 U.S. 339, 347–48, 88 S.Ct. 2173, 2177–78, 20 L.Ed.2d 1138 (1968) where the Court held invalid a Massachusetts statute which imposed a sales tax upon a national bank. In the course of its opinion the Court construed the state statute as imposing the legal incidence of the tax upon the purchaser rather than the vendor. The Massachusetts State Court from which the appeal originated had construed the statute to impose the tax on the vendor. In reversing, the court stated "[t]here can be no doubt from the clear wording of the statute that the Massachusetts Legislature intended that this sales tax be passed on to the purchaser. For our purposes, at least, that intent is controlling." *Id.* at 348, 88 S.Ct. at 2178. It is difficult to understand how the State can reasonably construe this language to be helpful here. There was no Section 1341 issue in that case at all—the appeal

was not from a district court but a state court. No one questions the right of the State of New York to place the legal incidence of the tax upon the oil companies— but it is an entirely different matter for the legislature to instruct the person taxed that he cannot raise the resources to pay the tax by increasing the price of his product.

As we have indicated the tax purpose of the legislation was to raise funds for the mass transit system. However, the purpose of the anti-passthrough provision was not to raise taxes but "to do nothing that will contribute to further increases in the price of petroleum products to (New York) consumers" and "to prevent such gross receipts tax from fueling inflation by prohibiting the passthrough of such tax to the consumers of this state." N.Y. Act, ch. 272, § 1.

This objective is certainly not an exercise of a taxing power but a police power affecting the price structure of petroleum products. We agree that the State has the right to place the legal incidence of the tax upon the oil companies; it has selected its target. But in barring the targets of the tax from recovering their costs from the consumer directly or indirectly, the State has gone beyond its taxing powers and has employed its police powers. Whether this is appropriate is not the issue before us; whether it results in a collision with EPAA is for TECA. We simply hold that that action is not insulated from federal scrutiny by Section 1341.

The mere fact that the anti-passthrough section is contained in a tax law of the State should not lead to automatic sanctuary under Section 1341. In *Wells v. Malloy*, 510 F.2d 74 (2d Cir. 1975), this court held that a District Court was not prevented from considering the constitutionality of a Vermont Motor Vehicle Tax which provided for the suspension of a motor vehicle license if the owner failed to pay the tax due under the state law. An indigent claimed that such suspension created irreparable and immediate hardship and harm to him in violation of his equal protection rights under the fourteenth amendment. This court found that his attack did not seek a restraint upon the assessment, levy or even the collection of the tax.

That the attack of the oil companies is not on those sections of Section 182 which provide for the assessment, levy or collection of the tax within the prohibition of Section 1341, is bolstered by the statement of James H. Tully, Jr., Commissioner of Taxation and Finance of the State of New York in his affidavit in support of a stay which states in part that the plaintiffs "do not challenge the imposition of the tax, or the rate of the tax, or the allocation formula on the collection of the tax." He further stated that anti-passthrough provision "is all that the court enjoined."

We agree therefore with the District Court that the anti-passthrough provision is not an exercise of the taxing power of the State within Section 1341 but rather of its police powers directed to its express concerns about inflation and rising fuel costs. A constitutional attack under the Supremacy Clause on that aspect of the law is not within Section 1341.

Having so held we need not address the issue of whether or not a plain, speedy and efficient remedy may be had in the courts of this State.

The stay of enforcement is continued by this court and shall continue only until such time as the State can seek a stay from TECA. Any motion for further relief should be directed to that court.